IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT E. CLEMENT,

    Plaintiff,

v.

                                      3:18-CV-586-PK

                                      OPINION AND ORDER

ECOLAB, INC., and DOES I-V,

    Defendants.

PAPAK, Magistrate Judge:

    Plaintiff Scott E. Clement filed this action against defendant Ecolab, Inc. ("Ecolab"), and five fictitiously named Doe defendants in the Multnomah County Circuit Court on March 8, 2018. Ecolab removed Clement's action to this court on April 5, 2018, on diversity jurisdictional grounds. By and through his complaint, Clement alleges that he is the general manager of a McCormick & Schmick's restaurant (the "Restaurant") owned by Landry's. Inc. ("Landry's"), and that Landry's had a contract with Ecolab pursuant to which Ecolab was obliged to provide pest

control services at the Restaurant. Clement further alleges that under the contract, Ecolab agreed to respond by telephone to requests for service at the Restaurant within one hour, and to arrive at the restaurant to provide requested services within 24 hours. Clement further alleges that in July and August 2017, Ecolab failed to respond to requests for pest-control services in connection with the presence of spiders at the restaurant, and that on August 25, 2017, in light of Ecolab's failure to respond to his multiple requests for service, he cleared out spider webs at the restaurant by himself, in the course of which he was bitten by a brown recluse spider, causing him to suffer severe injury. Arising out of the foregoing, Clement alleges Ecolab's liability for negligence and for breach of contract. Clement seeks award of approximately $1 million in damages, plus pre- and post-judgment interest thereon.

Because it appears to be undisputed that Clement is a citizen of the State of Washington, and that Ecolab is a Delaware corporation with its principal place of business in Minnesota, this court appears to have diversity jurisdiction over Clement's action pursuant to 28 U.S.C. § 1332 based on the complete diversity of the parties and the amount in controversy.

Now before the court is Ecolab's motion (#23) for judgment on the pleadings as to Clement's claims against it. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, Ecolab's motion (#23) is granted as to Clement's negligence claim and denied as to his breach of contract claim, and Clement's negligence claim is dismissed with prejudice.

## LEGAL STANDARD

Fed. R. Civ. P. 12(c) governs motions for judgment on the pleadings. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may

move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. . . . However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citations omitted). In evaluating a motion for judgment on the pleadings, the allegations of the non-moving party are credited as true, whereas those allegations of the moving party which have been denied are deemed false for purposes of the motion. *See id.* (citation omitted).

## FACTUAL BACKGROUND

### I. The Parties

It appears to be undisputed that plaintiff Clement is a citizen of the State of Washington. Clement is employed as the general manager of the Restaurant owned by Landry's in Portland, Oregon.

Defendant Ecolab is a Delaware corporation headquartered in Minnesota. Ecolab is party to a contract with Landry's pursuant to which it agreed, *inter alia*, to provide certain specified pest elimination and pest control services at the Restaurant.

### II. Clement's Allegations in Support of His Claims[1]

Clement has at all material times been the general manager of the Restaurant. *See*

---

[1] Except where otherwise indicated, the following recitation constitutes my construal of the allegations of Clement's complaint in light of the legal standard governing motions for judgment on the pleadings under Federal Civil Procedure Rule 12(c).

Page 3 - OPINION AND ORDER

Complaint (#1-1), ¶ 5. At a material time, defendant Ecolab entered into a contract with Landry's, the owner of the Restaurant, to provide "pest elimination, pest control and exterminator services to Landry's-owned facilities nationwide, including the Restaurant." *Id.*, ¶ 9. Pursuant to the contract between Ecolab and Landry's (the "Agreement"), "Ecolab was obligated to perform pest elimination and pest control services at the Restaurant, including promising [*sic*] 'proactive prevention' through the use of reliable protocols supported by science to help protect customers through regular service visits by highly-trained and professional service specialists." *Id.*, ¶ 10.

> The Agreement provided for regular service visits. Additionally, in the Agreement, Ecolab also agreed that it could be contacted regarding pest activity and concerns, and that its representatives would be available 24 hours a day, seven days a week. Ecolab also promised to call back within one hour of such calls to schedule a visit, which visit would occur within 24 hours where immediate attention is requested. Ecolab also agreed to provide emergency services 24 hours a day, seven days a week.

*Id.*, ¶ 11. Clement, in his capacity as general manager of the Restaurant, was responsible for "coordinating with Ecolab for performance of its pest elimination services at the Restaurant." *Id.*, ¶ 12. In connection with that responsibility, Clement often brought pest concerns to Ecolab's attention between Ecolab's regular service visits, including "to address the elimination and prevention of spider infestation." *Id.*

In the summer and early autumn of 2017, Clement placed several calls to Ecolab requesting that Ecolab perform services at the Restaurant in connection with eliminating spider infestations. *See id.*, ¶ 13. Ecolab failed to timely respond to Clement's service calls of July and August 2017, and failed to perform the requested services (including the request to eliminate spider infestations), notwithstanding its knowledge that the presence of spiders at the Restaurant "posed a threat to the health and safety of the Restaurant's customers, employees and other

Page 4 - OPINION AND ORDER

visitors." *Id.* ¶ 16; *see also id.*, ¶ 15.

On August 25, 2017, Ecolab not having eliminated the spiders infesting the Restaurant, Clement cleared the spider webs in and around the Restaurant himself. *See id.*, ¶ 18. While doing so, Clement was bitten by what he identifies as a brown recluse spider. *See id.*, ¶ 19. As a result of the spider bite, Clement suffered physical injuries and was forced to miss work, causing him to incur economic damages. *See id.*, ¶¶ 19-22.

It is Clement's position that Ecolab's failure to respond to Clement's service calls of July and August 2017 unreasonably created a foreseeable risk of harm to Clement. *See id.*, ¶ 26. It is further Clement's position that both Ecolab's failure to respond to Clement's service calls of July and August 2017 and its failure to provide pest elimination or pest control services in response to those calls constituted breach of the Agreement between Landry's and Ecolab, and that he was at all material times an intended beneficiary of that Agreement. *See id.*, ¶¶ 30, 32.

### III. Ecolab's Evidentiary Proffer

In support of its motion for judgment on the pleadings, Ecolab proffers a redacted copy of the Agreement between Landry's and Ecolab. Because Clement's breach of contract claim arises directly out of Clement's allegations that Ecolab's complained-of conduct constituted breach of Ecolab's contractual obligations under the Agreement, and because Clement's complaint refers extensively to that Agreement, I deem the Agreement incorporated by reference into Clement's complaint, and consider Ecolab's motion together with Ecolab's supporting evidentiary proffer without first construing it as a motion for summary judgment. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Ecolab and Landry's entered into the Agreement effective January 1, 2016. *See*

Page 5 - OPINION AND ORDER

Declaration (#24) of Jeanne Loftus ("Loftus Decl."), Exh. 1 (the Agreement) at 1. Pursuant to the Agreement, Ecolab was obliged to provide pest elimination and pest control services specified in detail in the Agreement's Exhibit A at restaurant locations specified in the Agreement's Exhibit B. *See id.*, ¶ 1. The Agreement specified that "<u>Exhibit B</u> can change from time to time as [Landry's] purchases, opens, closes, sells or liquidates individual locations" but did not similarly indicate that the services listed in Exhibit A were subject to change. *Id.* (underlining original). Ecolab was obliged to provide the services specified in the Agreement's Exhibit A "at the times and locations reasonably requested by [Landry's]." *Id.*, ¶ 6. .

Ecolab specifically agreed to provide pest elimination and pest control services at Landry's locations, including the Restaurant, in connection only with cockroaches (specifically defined as "American, German, Oriental, Australian, Turkestan, Brown, and Smoky Brown cockroaches only"), rodents (specifically defined as "house mice, Norway rats and roof rats only"), ants (specifically defined as "all ants other than carpenter or other wood destroying insects, pharaoh, and fire"), and small flies (specifically defined as "red-eyed or dark-eyed fruit flies only"). *Id.*, Exh. A at 2-3. Ecolab additionally offers such services in connection with large flies (specifically defined as "house, blow and bottle flies only"), birds, and termites, but Landry's declined to purchase Ecolab's large fly, bird, and termite pest elimination and pest control services. *Id.*, Exh. A at 4-5. Ecolab further agreed to provide "Entry Point Protection" services at Landry's locations, including the Restaurant, in connection with the control of ants (as defined above) and cockroaches (as defined above) as well as "ground beetles, springtails, silverfish, crickets, centipedes, millipedes, sowbugs, pillbugs, and earwigs." *Id.*, Exh. A at 3. Ecolab additionally offers "Air Quality" related services, but Landry's declined to purchase those

services. *See id.,* Exh. A at 4. Ecolab does not offer and Landry's did not purchase from Ecolab any pest elimination or pest control services in connection with spiders of any species or description. *See id., passim.*

The Agreement provides that:

Ecolab can develop specialized programs for other pest issues if needed. If such services are requested, the scope of those services and the applicable fees will be more particularly set forth in a separate services agreement to be signed by the parties before services are rendered.

*Id.,* Exh. A at 5. It appears to be undisputed that Landry's did not request that Ecolab develop programs for other pest issues beyond those specified above, including in connection with the control or elimination of spiders of any description, and that Landry's and Ecolab at no time entered into any material "separate services agreement" beyond the Agreement itself.

The Agreement specifically provides that "*Ecolab is only responsible for treating those specific pests which the parties have agreed to in writing,*" and further specifically provides that "[i]f Ecolab treats for a pest not specifically listed in th[e Agreement], [Landry's'] only remedy for a new or continued problem relating to that pest will be a free retreatment." *Id.,* Exh. C at 1 (emphasis supplied). Again, no party suggests that the parties at any time agreed in writing that Ecolab would have any ongoing responsibility for treating spiders at the Restaurant or any other Landry's location.

Notwithstanding the foregoing, Ecolab additionally promised as follows:

**Ecolab Customer Service:** [Landry's] may contact Ecolab regarding Covered Pest [that is, pests listed in the Agreement's Exhibit A as pests in connection with which Landry's purchased Ecolab's services as discussed above] activity *or other pest concerns* which occur between regular service visits by calling [Ecolab's Customer Service] (*non-Covered Pests will be subject to a separate fee*). Customer Service representatives are available 24 hours a day, seven days a week.

> **Call Back:** Within one hour after [Landry's] calls Ecolab's Customer Service and reports a pest issue, an Ecolab representative will call [Landry's] back to discuss [Landry's] issue and schedule a visit for assessing the situation.
>
> **On-site Assessment:** If, at the time of the call back, it is determined that a matter needs immediate attention, then Ecolab will be at [Landry's' facility within 24 hours to determine if the issue needs to be escalated.

*Id.*, Exh. A at 2 (bolded emphasis original; italicized emphasis supplied).

Landry's and Ecolab expressly agreed as follows:

> Th[e] Agreement reflects the entire understanding of the parties and supersedes all previous and contemporaneous agreements or understandings between the parties, both written and verbal, concerning the subject matter of th[e] Agreement. **Th[e] Agreement may only be amended by a writing signed by the respective representatives of Ecolab and [Landry's]** who signed th[e] Agreement, or their successors or supervisors. The terms of any purchase order (other than the stated quantity ordered), release, acknowledgment or other document or communication between the parties will not apply.

*Id.*, ¶ 13 (emphasis supplied). Landry's and Ecolab further agreed that "[w]aiver of any breach by either party, or failure of either party to exercise any rights under th[e] Agreement on one or more occasions is not a waiver of any right to exercise that right on another occasion." *Id.*, ¶ 16. Landry's and Ecolab further agreed that their Agreement was to be governed by Minnesota law. *See id.*, ¶ 15. Landry's and Ecolab entered into the Agreement for an initial three-year term, following the expiration of which the effective period of the Agreement would automatically renew for successive thirty-day periods unless one party provides thirty days notice of intent not to renew. *See id.*, ¶ 11.1.

### IIII. Clement's Evidentiary Proffer

In support of his opposition to Ecolab's motion for judgment on the pleadings, Clement offers his own sworn declaration testimony that from time to time Ecolab has provided pest control services at the Restaurant in connection with the presence of spiders, both during the

Page 8 - OPINION AND ORDER

course of regularly scheduled services and as a result of specific service calls taking place between regularly scheduled services. Clement additionally offers copies of certain customer service reports and invoices issued by Ecolab to Landry's indicating that from time to time Ecolab provided pest control services including efforts to control spiders at the Restaurant. It is Clement's position as expressed by and through his opposition to Ecolab's motion for judgment on the pleadings that the course of conduct between Ecolab and Landry's (as described in his sworn declaration testimony and as memorialized in his documentary proffer) was effective to modify the Agreement such that, pursuant to the Agreement as so modified, Ecolab owed Landry's a duty to provide pest elimination and pest control services at the Restaurant in connection with spider infestations.

There is no sense in which either Clement's testimony or the facts to which he testifies may properly be deemed incorporated by reference into Clement's complaint. Indeed, the doctrine of incorporation by reference is by its terms inapplicable to testimonial evidence. *See Daniels-Hall*, 629 at 998. The facts to which Clement testifies are likewise in no sense fit matters for judicial notice. *See* Fed. R. Evid. 201(c). At this pleading stage of these proceedings, therefore, this court must disregard Clement's testimony for purposes of determining whether Ecolab is entitled to judgment as a matter of law on the face of Clement's complaint. *See Hal Roach Studios*, 896 F.2d at 1550.

Moreover, Clement's complaint contains no allegations referencing any of the documents Clement proffers into evidence, and Clement's claims do not clearly arise out of the proffered documents. As such, good grounds do not exist for deeming any of the proffered documents incorporated by reference into Clement's complaint. *See Daniels-Hall*, 629 at 998. In addition,

Page 9 - OPINION AND ORDER

the proffered documents do not contain adjudicative facts fit for judicial notice. *See* Fed. R. Evid. 201(c). At this pleading stage of these proceedings, therefore, this court must likewise disregard Clement's proffered documentary evidence for purposes of determining whether Ecolab is entitled to judgment as a matter of law on the face of Clement's complaint. *See Hal Roach Studios*, 896 F.2d at 1550.

Although Clement's proffered testimonial and documentary evidence is potentially material to the question whether Clement could amend his pleading to cure any deficiencies identified in his allegations in support of his breach of contract claim, it is without relevance to the question whether his negligence claim is subject to cure by amendment. Because (as noted above and as discussed in greater detail below) I find that Ecloab is entitled to judgment on the face of Clement's pleading as to his negligence claim but not as to his breach of contract claim, I disregard Clement's evidentiary proffer in its entirety for purposes of resolving the motion now before the court.

## ANALYSIS

I. **Clement's Breach of Contract Claim**

   A. **Choice of Law as to Clement's Breach of Contract Claim**

Other than under circumstances plainly inapplicable here, the Oregon courts respect and enforce contractual choice of law provisions. *See* Or. Rev. Stat. § 15.350(1). Because the parties to the Agreement expressly agreed that the Agreement was to be governed by Minnesota law, Clement's breach of contract claim is governed by Minnesota law. *See* Or. Rev. Stat. § 15.350(1), (2).

## B. The Adequacy of Clement's Pleading to State a Breach of Contract Claim

As his breach of contract claim is currently pled, Clement alleges Ecolab's liability for breach of its contractual obligations under "the Agreement and [its] exhibits" by failing to timely respond to Clement's requests for services and by failing to treat the Restaurant for spider infestations in response to those requests. *See* Complaint, ¶¶ 11-12, 15, 17, 32. Under Minnesota law, to state a claim for breach of contract a plaintiff must allege "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011), *citing Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974). Breach of contract plaintiffs are not required to allege that they were damaged by the complained-of breach, because even absent consequential damages plaintiffs may be entitled under Minnesota law to nominal damages in connection with breach of contract that does not cause harm or loss. *See id.* at 200 n. 5, *citing Burns v. Jordan*, 44 N.W. 523, 524 (Minn. 1890).

Although as discussed above the Agreement according to its terms does not expressly oblige Ecolab to provide pest elimination or pest control services in connection with infestations of spiders, Ecolab was expressly obliged under the Agreement to respond to service calls from Landry's representatives as follows:

> **Ecolab Customer Service:** [Landry's] may contact Ecolab regarding Covered Pest [that is, pests listed in the Agreement's Exhibit A as pests in connection with which Landry's purchased Ecolab's services as discussed above] activity *or other pest concerns* which occur between regular service visits by calling [Ecolab's Customer Service] (*non-Covered Pests will be subject to a separate fee*). Customer Service representatives are available 24 hours a day, seven days a week.
>
> **Call Back:** Within one hour after [Landry's] calls Ecolab's Customer Service and

Page 11 - OPINION AND ORDER

reports a pest issue, an Ecolab representative will call [Landry's] back to discuss [Landry's] issue and schedule a visit for assessing the situation.

**On-site Assessment:** If, at the time of the call back, it is determined that a matter needs immediate attention, then Ecolab will be at [Landry's' facility *within 24 hours* to determine if the issue needs to be escalated.

Agreement, Exh. A at 2 (bolded emphasis original; italicized emphasis supplied). Clement has clearly alleged Ecolab's breach of its contractual obligation to return his service calls of July and August 2017 within one hour of the time those calls were placed; indeed, Clement alleges that Ecolab never responded to those service calls at any time. *See* Complaint, ¶¶ 15, 18. Because Clement has unambiguously alleged the existence of a valid contract, *see id.*, ¶¶ 9, 29, his status as an intended beneficiary of the contract, *see id.*, ¶ 30, Landry's performance of all conditions precedent to Ecolab's performance of its obligations under the contract, *see id.*, ¶ 31, and Ecolab's breach of its clear contractual obligation to respond to service calls within one hour and to be at the Restaurant within 24 hours to determine if the issue "needs to be escalated" if in the course of returning the initial service call it was "determined" that the matter needed "immediate attention," *see id.*, ¶¶ 15, 18, 32, he has stated a claim for breach of contract as a matter of Minnesota law. Ecolab is therefore not entitled to judgment in its favor on Clement's breach of contract claim at this pleading stage of these proceedings. Ecolab's motion (#23) for judgment on the pleadings is therefore denied as to Clement's breach of contract claim, and there is no need at this stage of these proceedings to consider Clement's unpled theory of contract modification through course of conduct.

II.     **Clement's Negligence Claim**

    A.     **Choice of Law as to Clement's Negligence Claim**

Because here no party suggests that any law other than that of the State of Oregon

Page 12 - OPINION AND ORDER

governs Clement's negligence claim, *see* Or. Rev. Stat. § 15.430(1), because the injurious conduct at issue took place in Oregon, *see* Or. Rev. Stat. 15.440(2)(a), and because the injury at issue was suffered in Oregon, Or. Rev. Stat. § 15.440(b), (c), Clement's negligence claim is governed by Oregon law.

**B.     The Adequacy of Clement's Pleading to State a Negligence Claim**

Clement alleges Ecolab's liability in negligence in connection with its failure to take reasonable action to eliminate or control spider infestations at the Restaurant notwithstanding its knowledge that spider infestations at the Restaurant "posed a threat to the health and safety of the Restaurant's customers, employees and other visitors." Complaint, ¶ 16; *see also id.*, ¶¶ 17, 25, 26. Clement further alleges Ecolab's liability in negligence in connection with its failure to respond to Clement's requests for pest elimination and control services at the Restaurant in July and August 2017 and failure to perform the requested services in a timely and competent manner. *See id.*, ¶¶ 17, 25, 26.

To state a claim for negligence under Oregon common law, a plaintiff must show that the defendant owed the plaintiff a duty, that the duty was breached, and that the breach caused the plaintiff harm. *See, e.g., Fazzolari v. Portland School Dist.*, 303 Or. 1, 14-17 (1987). In the absence of a specific duty created, defined, or limited by a specified status, relationship or standard of conduct, "the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." *Id.* at 17. Here, Clement does proffer the argument that he and Ecolab were in a "special relationship" such that Ecolab owed him a specific duty of care, but the Oregon courts have never deemed any relationship analogous to that

Page 13 - OPINION AND ORDER

existing between a pest control business and an employee of one of its customers to be the kind of "special relationship" that would obviate the need for foreseeability analysis under *Fazzolari*. *See, e.g., Conway v. Pac. Univ.*, 324 Or. 231, 236-241 (1996). Moreover, even if a special relationship existed between Clement and Ecolab such that Ecolab owed Clement a duty of care, where the scope of such a duty is not defined by the nature of the parties' special relationship, the scope of the duty remains "defined or limited by common-law principles such as foreseeability" as provided by the *Fazzolari* court. *See Or. Steel Mills, Inc. v. Coopers & Lybrand, Ltd. Liab. P'ship*, 336 Or. 329, 341-342 (2004).

In the absence of a special relationship giving rise to a specific duty of care that would obviate the need for foreseeability analysis under *Fazzolari*, to state a claim for negligence under Oregon law a plaintiff must allege:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Solberg v. Johnson*, 306 Or. 484, 490-491 (1988), *citing Fazzolari*, 303 Or. 1. Although reasonableness is generally a question of fact to be determined by a jury, where there is no doubt that a defendant's conduct was reasonable, the court may resolve the question without submitting it to a trier of fact. *See, e.g., Thurman v. Thomas*, 70 Or. App. 159, 162 (1984), *citing Hamilton v. State*, 42 Or. App. 821, 828-829 (1979).

As noted above, Clement alleges Ecolab's breach of duties of care specifically and solely created by the terms of the Agreement, but also alleges its breach of the generally applicable duty of all persons to take reasonable care to prevent foreseeable risks of harm created by such

Page 14 - OPINION AND ORDER

persons' own conduct. *See* Complaint, ¶¶ 17, 25, 26. To the extent Clement alleges breach of a duty of care that exists solely as a creature of the contractual Agreement between Ecolab and Landry's, his negligence claim will not lie, and his only available remedy is in contract:

> Contract obligations are "'based on the manifested intention of the parties to a bargaining transaction,'" whereas tort obligations are "'imposed by law — apart from and independent of promises made and therefore apart *from the manifested intention of the parties* — to avoid injury to others.'" *Conway v. Pacific University*, 324 Ore. 231, 237, 924 P.2d 818 (1996) (quoting *Prosser and Keeton on the Law of Torts*, § 92, 655-56 (W. Page Keeton, ed., 5th ed 1984) (emphasis in *Conway*). Because tort liability is imposed by common law negligence principles, that responsibility exists unless altered or eliminated by a contract or some other source of law. In *Fazzolari v. Portland School Dist. No. 1J*, 303 Ore. 1, 734 P.2d 1326 (1987), [the Oregon Supreme Court] made that point with respect to common law negligence:
>
>> "Unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."
>
> *Id.* at 17. Thus, *Fazzolari* lays out a framework to address whether a common law negligence claim is legally cognizable even when there is a contractual relationship between the parties. In answering that question, we first consider whether plaintiffs alleged that defendants unreasonably created a foreseeable risk of harm to a protected interest, resulting in injury to plaintiffs. If so, we must determine whether the contract between the parties altered or eliminated defendants' common law duty to avoid harming plaintiffs. If it did not, then the contract does not bar plaintiffs from bringing a negligence action against defendants.

*Abraham v. T. Henry Constr., Inc.*, 350 Or. 29, 36-37 (2011) (emphasis original; internal modifications omitted). The *Abraham* court further held as follows:

> Nothing in [Oregon jurisprudence] suggests that, by entering into a contract, a party necessarily waives tort claims against another party to the contract. *See Estey v. Mackenzie Engineering Inc.*, 324 Ore. 372, 376, 927 P.2d 86 (1996) ("'A contract will not be construed to provide immunity from the consequences of a party's own negligence unless that intention is clearly and unequivocally expressed.'") (*quoting Transamerica Ins. Co. v. U.S. Nat'l Bank*, 276 Ore. 945,

951, 558 P.2d 328 (1976)). Indeed, [the Oregon courts have] long recognized that tort and contract remedies may coexist. *See Ashmun v. Nichols*, 92 Ore. 223, 235, 180 P. 510 (1919) (so stating); *Newman v. Tualatin Development Co. Inc.*, 287 Ore. 47, 49, 597 P.2d 800 (1979) (certifying class action against contractor by plaintiffs alleging contract and tort claims arising from construction defects). In *Georgetown Realty v. The Home Ins. Co.*, 313 Ore. 97, 831 P.2d 7 (1992), [the Oregon Supreme Court] summarized the case law discussing the choice between tort and contract remedies:

> "When the relationship involved is between contracting parties, and the gravamen of the complaint is that one party caused damage to the other by negligently performing its obligations under the contract, then, and *even though the relationship between the parties arises out of the contract, the injured party may bring a claim for negligence if the other party is subject to a standard of care independent of the terms of the contract.* If the plaintiff's claim is based solely on a breach of a provision in the contract, which itself spells out the party's obligation, then the remedy normally will be only in contract, with contract measures of damages and contract statutes of limitation. That is so whether the breach of contract was negligent, intentional, or otherwise."

*Id.* at 106 (emphasis added).

*Abraham*, 350 Or. at 38-39 (2011) (emphasis original; internal modifications omitted). Here, to the extent the duty of care Ecolab is alleged to have breached was its duty to respond to Clement's requests for services under the Agreement, its duty to perform the requested services in a "timely and competent" manner according to any metric created by Ecolab's obligations under the Agreement, or any duty to take action to treat known spider infestations at the Restaurant arising out of its relationship with Landry's as created or memorialized by and through the Agreement, his sole remedy necessarily lies as a matter of Oregon law in contract rather than in negligence. To that extent, his negligence claim is therefore without merit, and its deficiencies are not subject to cure by amendment. To the extent Clement's theory of negligence is premised on breach of a duty of care that exists as a creature of the Agreement, Ecolab's motion (#23) is therefore granted as to the negligence claim, and the negligence claim is to that extent dismissed

Page 16 - OPINION AND ORDER

with prejudice.

As noted above, Clement alternatively alleges Ecolab's breach of duty independent of the contract to prevent "the Restaurant [from] continu[ing] in a dangerous condition despite the known risks, especially of spider bites," Complaint, ¶ 26, or otherwise to take reasonable steps to prevent any foreseeable harm where the risk of such harm was created by Ecolab's own conduct. This alternative theory of Ecolab's negligence is likewise without merit. A non-party to the Agreement could be liable in negligence for failure to take reasonable steps to mitigate a known risk presented by an infestation of spiders at the Restaurant only to the extent the known risk was created by the non-party's own conduct. *See Solberg*, 306 Or. at 490-491, *citing Fazzolari*, 303 Or. 1. Here, Clement does not allege that Ecolab's own conduct created the presence of spiders at the Restaurant, but rather that Ecolab's conduct created the risk at issue only in that Ecolab failed to take steps to remove the spiders after learning about their presence. This theory of negligence necessarily begs the question of Ecolab's duty of care.

Absent a duty of care arising out of the parties' contractual relationship (breach of which would, as discussed above, sound in contract rather than in negligence), Ecolab's duty to prevent harm the risk of which was a foreseeable consequence of its own conduct is the same as that of any non-party to the Agreement. Because in the absence of a contractual duty of care, there is no sense in which Ecolab's failure to take action could have created the risk at issue here, Ecolab cannot be liable to Clement in negligence on a pure foreseeability theory. *See Solberg*, 306 Or. at 490-491, *citing Fazzolari*, 303 Or. 1. In consequence, Clement's negligence claim fails on the face of Clement's pleading to the extent premised on breach of a duty of care that exists independently of the Agreement, and the deficiencies in Clement's allegations in support thereof

Page 17 - OPINION AND ORDER

are not subject to cure by amendment. Ecolab's motion (#23) is therefore granted as to the negligence claim to the extent premised on a foreseeability theory, and the negligence claim is to that extent dismissed with prejudice.

## CONCLUSION

For the reasons set forth above, Ecolab's motion (#23) for judgment on the pleadings is granted as to Clement's negligence claim and denied as to his breach of contract claim, and Clement's negligence claim is dismissed with prejudice.

Dated this 20th day of September, 2018.

_____
Honorable Paul Papak
United States District Judge