UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

SCOTT E. CLEMENT, an individual,

        Plaintiff,

      v.

ECOLAB, INC., a Delaware corporation;
and DOES I through V,

        Defendants.

_____

Case No. 3:18-cv-586-JR

ORDER

Russo, Magistrate Judge:

      Plaintiff Scott Clement brings this action against Ecolab, Inc. and five Doe defendants alleging negligence and breach of contract.   On September 20, 2018, the Court dismissed plaintiff's negligence claim with prejudice.   Opinion and Order (ECF #33).   Plaintiff subsequently moved to amend his complaint to add an additional breach of contract claim and for reconsideration of his negligence claim.   The Court granted the motion to amend and affirmed dismissal of the negligence claim.   Order (ECF #47).   Although plaintiff's amended

complaint still includes a claim for negligence, that claim has been dismissed with prejudice and the case proceeds on the breach of contract claim only. Defendant Ecolab now moves for summary judgment on all claims for damages against it.

BACKGROUND

As the Court has previously noted:

> Plaintiff alleges he is the general manager of a McCormick & Schmick's restaurant (the "Restaurant") owned by Landry's. Inc. ("Landry's"), and that Landry's had a contract with Ecolab pursuant to which Ecolab was obliged to provide pest control services at the Restaurant. Plaintiff further alleges that under the contract, Ecolab agreed to respond by telephone to requests for service at the Restaurant within one hour, and to arrive at the restaurant to provide requested services within 24 hours.
>
> Plaintiff alleges Ecolab failed to respond to requests for pest-control services in connection with the presence of spiders at the restaurant in July and August 2017. As a result, plaintiff asserts he cleared out spider webs at the restaurant by himself, during which he was bitten by a brown recluse spider, causing him to suffer severe injury.

Id. at pp. 1-2.

Despite the absence of spiders from the list of included pests to be eliminated in the written contract, the Court allowed plaintiff to assert an implied contract or modification to the contract to include spider-related services. Id. at pp. 4-5. Accordingly, plaintiff alleges two counts for breach of contract. Pursuant to count 1, plaintiff alleges he was the intended beneficiary of the pest elimination agreement between Ecolab and Landry's and that by failing to timely respond to plaintiff's requests for services at the restaurant and failing to timely and adequately perform the requested services at the restaurant, Ecolab breached its contractual obligations, promises, and guarantees. First Amended Complaint (ECF #48) at ¶ 36. Pursuant to count 2, plaintiff alleges:

> Through their oral discussions and course of performance during 2016 and 2017 as alleged herein, Ecolab and Plaintiff (on behalf of the Restaurant) formed a binding and enforceable contract under which (in exchange for payment) Ecolab

agreed to immediately respond to requests for pest prevention and elimination services, including spiders, at the Restaurant and to promptly perform such services as part of Ecolab's routine periodic visits and on an interim basis as requested. Ecolab also agreed to perform such services, including spider-related services, so as to effectively prevent and eliminate the infestation of spiders at the Restaurant, and particularly in the exterior entry areas, awnings and columns adjacent to where guests and employees would be while dining outdoors. Such agreement was confirmed orally, through the parties' actions and course of conduct, and in the written service reports and invoices from Ecolab that were signed by Ecolab representatives…  In the alternative, such oral discussions and course of performance … constituted a modification to the Agreement to include spiders within the scope of the pests to be eliminated and prevented at the Restaurant.

….

Ecolab was paid for the spider-related services performed at the Restaurant, and Plaintiff and the Restaurant otherwise performed all conditions and obligations on their part to be performed under the contract, or such conditions and obligations have been excused.

By failing to timely respond to Plaintiff's requests for spider-related services at the Restaurant and failing to timely and adequately perform the requested services for spiders at the Restaurant, Ecolab breached its contractual obligations and promises under their contract.

Id. at ¶¶ 38-41.

Plaintiff also alleges that

On or about August 25, 2017, because Ecolab had not responded to Plaintiff's requests and had not performed the pest elimination and prevention services (including spraying for spiders) at the Restaurant, and fearing for the health and safety of customers, employees and visitors, Plaintiff undertook to clear out the multiple spider webs and other evidence of pests in and around the Restaurant. Had Ecolab been responsive to the requests of Plaintiff and Restaurant staff to treat for spiders and had Ecolab promptly and competently performed the requested and agreed spider-related prevention and elimination services, Plaintiff would not have endeavored to address the spider issue himself.

While Plaintiff was attending to the matters at the Restaurant that Ecolab had failed to address, Plaintiff was bitten by a spider on his leg. The spider bite caused Plaintiff substantial personal injury, pain, suffering and emotional distress. When the area of the bite became blistered, red and more painful in the days after the bite, Plaintiff was treated at an urgent care facility and was prescribed medication.

Thereafter, the area of the bite wound became more painful and swollen, and Plaintiff experienced associated weakness, fever, nausea and other physical ailments, which required Plaintiff to be hospitalized. Plaintiff was hospitalized for three days and two nights, during which he received various types of medical attention and medication.

As a direct, proximate and foreseeable consequence of his injuries, Plaintiff was unable to and did not return to work at the Restaurant for an extended period of time, and suffered lost wages as a result.

The foregoing has resulted in Plaintiff suffering economic damages and losses in an amount to be proven at trial. His damages include medical bills and related costs and expenses currently totaling approximately $25,000, lost wages while he was recovering from the injuries in the amount of approximately $3,000, lost bonus of approximately $3,000, and loss of approximately two weeks' vacation pay in the amount of approximately $4,500. Plaintiff has also suffered non-economic losses and damages, including pain, suffering, anxiety and emotional distress, in an amount to be proven at trial.

Id. at ¶¶21-25.

Defendant moves for summary judgment asserting the contractual disclaimers in the services agreement disclaim any liability for consequential, incidental, and/or special damages.

## DISCUSSION

The written pest elimination services agreement between Landry's and Ecolab limited liability as follows:

ALL PESTS (GENERAL PROVISIONS).
Pests Subject to Agreement. While this document applies to all services performed by Ecolab's Pest Elimination Division, this document does not, by itself, create an Ecolab obligation to treat for each of the pests discussed in this document. Ecolab is only responsible for treating those specific pests which the parties have agreed to in writing. If Ecolab treats for a pest not specifically listed in this document, Customer's only remedy for a new or continued problem relating to that pest will be a free retreatment.
….

LIMITATION OF LIABILITY. EXCEPT FOR THE EXPRESS WARRANTIES OR GUARANTEES CONTAINED IN THIS DOCUMENT ALL OTHER WARRANTIES OR GUARANTEES, EXPRESS OR IMPLIED, WRITTEN OR VERBAL, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE DISCLAIMED.

"CUSTOMER INDEMNIFICATION," ECOLAB ALSO DISCLAIMS LIABILITY TO CUSTOMER AND ALL OTHERS FOR ALL CONSEQUENTIAL, INCIDENTAL, AND/OR SPECIAL DAMAGES IN ANY WAY RELATED TO ECOLAB'S SERVICES OR PRODUCTS. CUSTOMER ACKNOWLEDGES AND AGREES THAT ECOLAB IS NOT RESPONSIBLE FOR ANY DAMAGE RELATED TO ANY PEST (WHETHER THE PEST IS SPECIFICALLY REFERENCED IN THIS DOCUMENT OR NOT) FOR ANY REASON WHENEVER CAUSED. THIS PROVISION WILL SURVIVE ANY TERMINATION OR EXPIRATION OF ANY AGREEMENT OR RELATIONSHIP BETWEEN ECOLAB AND CUSTOMER.

Pest Elimination Services Agreement (ECF #24-1) at pp. 24, 27-28.

Defendant asserts these provisions exclude the damages sought by plaintiff regardless of whether the claim is brought under the agreement as written or based on an oral modification to the agreement. Plaintiff contends the clauses are overbroad and unenforceable, contravene public policy, and do not apply to the circumstances in this case where the breach is based not on the performance of a service, but rather the failure to provide service. As noted in the Court's previous orders in this case, Minnesota law applies.

A.     Enforceability of the of the Exculpatory Clause

"A clause exonerating a party from liability will be strictly construed against the benefited party. If the clause is either ambiguous[1] in scope or purports to release the benefited party from liability for intentional, willful or wanton acts, it will not be enforced." Schlobohm v. Spa Petite, Inc., 326 N.W.2d 920, 923 (Minn. 1982).

The Exculpatory clause in this case is very broad and purports to limit liability for all the listed damages in any way related to Ecolab's products or services. Accordingly, the clause could reasonably be construed as releasing liability for intentional or wanton acts. However, in

---

[1] In the section of plaintiff's brief directed to the unenforceability of the exculpatory clause, plaintiff does not argue the clause is ambiguous. However, with respect to his argument that the clause does not apply to the failure to perform services, plaintiff asserts the clause titled, "Pests Subject to Agreement" is ambiguous. The Court will address ambiguity with respect to plaintiff's argument that the "Pests Subject to Agreement" clause does not apply to the failure to timely respond to the service call.

this case, plaintiff has not alleged the claimed breach involved any intentional, willful, or wanton act on the part of Ecolab.[2]

> Some courts confronting similarly overbroad exculpatory provisions do not, as counterclaimants request, conclude that the entire provision is unenforceable; rather, they limit its applicability to claims which do not implicate willful and wanton negligence or intentional behavior. See, e.g., Honeywell, 43 F.Supp.2d at 1080–81. Others, however, conclude that the entire exculpatory clause is inapplicable. See, e.g., Wu ex rel. Tien v. Shattuck–St. Mary's Sch., 393 F.Supp.2d 831, 837–38 (D.Minn.2005). The Court concludes that limiting, rather than entirely voiding, the provision is more reasonable. It would make little sense to conclude ADT could have exculpated itself from negligence claims, but that by exculpating itself from claims of both negligence and gross negligence it exculpated itself from neither.

ADT Sec. Servs., Inc. v. Swenson, 276 F.R.D. 278, 301 (D. Minn. 2011). This Court similarly concludes the better approach is to limit the applicability of broad exculpatory clauses to claims which do not implicate willful, wanton, or intentional behavior rather than finding the entire clause void. See, e.g., Anderson v. McOskar Enterprises, Inc., 712 N.W.2d 796, 801 (Minn. Ct. App. 2006) (Even though the language was extremely broad so as to purportedly include claims

---

[2] Plaintiff does assert in his response that Ecolab specialists instructed restaurant employees to knock down spider webs after treatment and that such instruction in combination with an alleged failure to show up to kill the spiders amounts to reckless conduct. To the extent plaintiff alleges this claim against Ecolab and not a Doe defendant, however, one of the main elements in willful and wanton negligence is knowledge or consciousness of the one charged with such negligence of the peril faced by the one injured. Raths v. Sherwood, 195 Minn. 225, 230, 262 N.W. 563, 566 (1935). While wanton negligence can be stablished by a reckless disregard of the safety of the person or property of another by failing, after discovering the peril, to exercise ordinary care to prevent the impending injury, Alger, Smith & Co. v. Duluth-Superior Traction Co., 93 Minn. 314, 315, 101 N.W. 298, 299 (1904), here plaintiff presents no evidence that Ecolab was aware of the presence of any brown recluse spiders. Defendant notes that according to the Oregon Department of Agriculture, the brown recluse spider "does not occur in Oregon, despite reports to the contrary." *Oregon Spiders Facts & Fiction*, available at https://www.oregon.gov/ODA/programs/IPPM/Pages/OregonSpiders.aspx (Oregon Spiders Facts and Fiction). The Department further notes most spiders in Oregon are not known to be dangerous. Id. There is no evidence in the record from which a fact finder could determine that Ecolab engaged in wanton behavior with respect to the spider bite suffered by plaintiff.

arising from intentional acts, the unmistakable intent of the parties to such an agreement is that defendant would at least not be held liable for acts of negligence.).  Accordingly, the clause is enforceable with respect to claims that do not involve intentional, willful or wanton acts.

B.    Public Policy

If an exculpatory clause is not ambiguous and appropriately limited to a release of liability arising out of negligence, Minnesota courts next consider whether enforcement contravenes public policy.

> Courts [approach] the policy considerations in determining the validity of exculpatory clauses on an ad hoc case-by-case basis. An examination of the cases demonstrates the emergence of a two-prong test used by the courts in analyzing the policy considerations. Before enforcing an exculpatory clause, both prongs of the test are examined, to-wit: (1) whether there was a disparity of bargaining power between the parties (in terms of a compulsion to sign a contract containing an unacceptable provision and the lack of ability to negotiate elimination of the unacceptable provision) and (2) the types of services being offered or provided (taking into consideration whether it is a public or essential service).

Schlobohm, 326 N.W.2d at 923.

Plaintiff notes that Ecolab was the exclusive pest elimination service provider for all Landrys' restaurants across the country and that the restaurant that employed him had no practical alternative for service.  Nonetheless, plaintiff concedes there is no clear disparity in bargaining power.  Opposition to Motion for Summary Judgement (ECF #61) at p. 11.  However, plaintiff asserts pest elimination services provided to restaurants are of great importance to the public due to serious and obvious health, safety, and sanitary risks.  Plaintiff further asserts the chemical treatments used by Ecolab "are presumably subject to several state and federal regulations[, and Ecolab] promises that it will 'conform to applicable federal and state laws and regulations.'"  Id. at (citing Pest Elimination Services Agreement (ECF #24-1) at p. 3).

The Schlobohm court referenced the California decision of Tunkl v. Regents of University of California, 60 Cal.2d 92, 383 P.2d 441, 32 Cal.Rptr. 33 (1963), to analyze the public interest for purposes of exculpatory clauses. Schlobohm, 326 N.W.2d at 924.

> In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus, the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. [footnote omitted] The party seeking exculpation is engaged in performing a service of great importance to the public, [footnote omitted] which is often a matter of practical necessity for some members of the public. [footnote omitted] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. [footnote omitted] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [footnote omitted] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, [footnote omitted] and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.[footnote omitted] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, [footnote omitted] subject to the risk of carelessness by the seller or his agents.

Tunkl, 60 Cal.2d at 98–101, 383 P.2d at 444–46. Here, plaintiff vaguely touches upon regulation of the chemicals used by Ecolab but does not show that pest elimination services themselves are regulated. The fact that some regulation exists does not establish that the business affects the public interest. See, e.g., Arrowhead Elec. Co-op., Inc. v. LTV Steel Min. Co., 568 N.W.2d 875, 879 (Min.App.1997) (holding that even though defendant's maintenance of ash heap was subject to regulation by the Minnesota Pollution Control Agency, the parties' contract did not touch upon public interests); Malecha v. St. Croix Valley Skydiving Club, Inc., 392 N.W.2d 727 (Min.App.1986) (concluding that the presence of federal regulations around parachute jumping did not render void an exculpatory clause in a skydiving club's agreement).

8 - ORDER

In addition, while pest elimination services are certainly helpful to the food services industry, such service is not of great importance to the public bordering on necessity. Ecolab does not hold itself out as willing to perform the service for any member of the public who seeks it. Ecolab does not possess a decisive advantage of bargaining strength against any member of the public who seeks its service, and the purchaser of the service is not under the control of Ecolab. Moreover, Ecolab has agreed to indemnify Landry's for claims made by members of the public for any negligent acts. Thus, to the extent the service is important to the public to prevent pest-related injuries, the exculpatory clause does not operate to prevent patrons of the restaurant from seeking compensation for any negligent act. Accordingly, the clause does not contravene public policy.

C.      Applicability to Failure to Provide Service

Plaintiff argues the limitations in the exculpatory clause apply only to services Ecolab actually provides and cannot be reasonably interpreted to excuse Ecolab from performing its basic obligations of pest removal.

The agreement provides:

> Service Quality. All Services will be performed and guaranteed in accordance with Exhibit C. Ecolab agrees to provide the periodic Services in a good and workmanlike manner and in accordance with Ecolab's then-current standard written procedures, but at a minimum consistent with accepted industry practices applicable to the food-service industry. Materials and methods of application used in the performance of such Services will conform to applicable federal and state laws and regulations.

Pest Elimination Services Agreement (ECF #24-1) at p. 3.

Exhibit C contains the exculpatory clause. Plaintiff argues that the above clause should be interpreted to include a fundamental promise by Ecolab, entirely apart from any conditional guarantee or warrantees in exhibit C, to perform the agreed upon service. However, to the extent

the agreement was modified to include spider eradication, Ecolab did not fail to perform, but failed to perform timely.  Plaintiff himself attaches several monthly service invoices regarding spider treatment both before and after the date of the alleged spider bite.  See Declaration of Scott E. Clement at Exhibits A-G (ECF #62-1 - 7).[3]  Thus, even if a reasonable interpretation of the agreement would be to exclude the limitations provisions related to claims for a failure to provide services, there are no issues of fact that the services were in fact provided, albeit in an untimely fashion.

Plaintiff also argues that the oral modification to the agreement to include spider treatment somehow does not include the limitations mentioned in exhibit C.  However, the agreement expressly contemplates treatment for pests not specifically listed in the Agreement in the "Pests Subject to Agreement" clause.  See  Pest Elimination Services Agreement (ECF #24-1) at p. 25) ("If Ecolab treats for a pest not specifically listed in this document, Customer's only remedy for a new or continued problem relating to that pest will be a free retreatment.").  There is no ambiguity with respect to the limitation clauses in the agreement or their applicability to the alleged breach for failure to timely respond to a treatment call.  See Collins Truck Lines, Inc. v. Metro. Waste Control Comm'n, 274 N.W.2d 123, 126 (Minn.1979) (An exculpatory clause is ambiguous when it is susceptible to more than one reasonable construction).  Plaintiff's interpretation that a failure to timely provide the service removes the alleged breach from the clause related to the "Pests Subject to Agreement" is not reasonable.  Regardless of whether the spiders constituted a new or continuing problem, the agreement specifically addressed them.[4]

---

[3]  Indeed, plaintiff alleges Ecolab finally sent a technician to service the restaurant on or about September 8, 2017 and that Ecolab has treated the restaurant for spiders on multiple occasions since then.  First Amended Complaint (ECF #48) at ¶ 27.

[4]  Plaintiff also argues that because the "problem" is serious bodily injury and not a spider infestation, it is not logical to interpret the agreement to only allow for retreatment as a remedy.  However, this is exactly what the parties contracted for by incorporating the exculpatory clause

Finally, to the extent plaintiff suggests there is some new contract separate and apart from the written pest elimination services agreement, plaintiff admits he had no authority to execute such an agreement on behalf of Landry's and otherwise provides no evidence of such a contract executed by someone with authority from Landry's. Thus, to the extent there is any agreement to treat for spiders, it is part of the written agreement and subject to the limitations contained therein. Those limitations exclude the damages claims made by plaintiff. Accordingly, defendant's motion for summary judgment is granted.

<u>CONCLUSION</u>

Defendant Ecolab's Motion for Summary Judgment (ECF #58) is granted and defendant Ecolab is dismissed from this action.

DATED this 13th day of January, 2020.

_____/s/ Jolie A. Russo_____
JOLIE A. RUSSO
United States Magistrate Judge

---

to eliminate liability for "ALL CONSEQUENTIAL, INCIDENTAL, AND/OR SPECIAL DAMAGES IN ANY WAY RELATED TO ECOLAB'S SERVICES OR PRODUCTS" Pest Elimination Services Agreement (ECF #24-1) at pp. 24, 27-28 (Emphasis in original).